# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5079-16T4

N.W., by his Parent and Guardian
J.W.,

     Plaintiff-Appellant,

v.

GREATER EGG HARBOR
REGIONAL HIGH SCHOOL
DISTRICT,

     Defendant-Respondent.

_____

Argued October 30, 2018 – Decided December 5, 2018

Before Judges Hoffman, Geiger and Firko.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2302-15.

Deborah L. Mains argued the cause for appellant (Costello & Mains, LLC, attorneys; Deborah L. Mains, on the brief).

Timothy R. Bieg argued the cause for respondent (Madden & Madden, PA, attorneys; Timothy R. Bieg, on the brief).

PER CURIAM

Plaintiff N.W., by his parent and guardian, J.W.,[1] appeals from a June 16, 2017 order granting defendant Greater Egg Harbor Regional High School District summary judgment dismissing the complaint and denying plaintiff's oral motion to amend the complaint. We affirm.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to the opposing party. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

On April 28, 2015, plaintiff, an African-American student at Absegami High School during the 2014-2015 school year, stayed after school and went to the cafeteria. An unnamed security guard and Vice Principal Brian Aron entered the cafeteria and told the students they had to leave. As a result, plaintiff and his friends left the cafeteria and walked to the school's main entrance. Some of the group had exited, while plaintiff and several other students were still inside. Security guard Joseph Blazo, Aron, and Vice Principal Leslie Madison were escorting the remaining students out of the building. The students were told

---

[1] We use initials to protect plaintiff's identity.

they needed to leave the building. Several students mocked the Vice Principals, did not listen, and were otherwise misbehaving. At this point, Blazo raised his voice and told the students it was time to leave the building. This occurred after school had ended for the day.

Blazo pushed plaintiff on his book bag, "causing him to stumble out the door." Plaintiff then told Blazo "not to put his f–ing hands on me, don't touch me," and "to take his big A into school." Plaintiff repeated his statements three times. Blazo "grabbed" plaintiff's right wrist and held it for about two seconds. In response, plaintiff smacked Blazo's hand and once again stated, "don't fucking touch me." Blazo responded, "Oh yeah? Oh yeah? You fucking nigger!"

Plaintiff claims Blazo's racist remark caused him pain and suffering, and embarrassed him, which he asserts is the same emotional response "any reasonable African-American exposed to the same racially hostile language" would experience. He alleges the discrimination "discouraged [him] from returning to and enjoying the school, a place of public accommodation." Plaintiff did not see a doctor or therapist as a result of Blazo's conduct; however, he claims the incident affected him to the extent that he did not want to go to school, and if he did, he would arrive late to avoid Blazo.

A-5079-16T4

Following the incident on April 28, 2015, plaintiff had no further contact with Blazo and continued to attend Absegami High School. No employee ever directly prevented plaintiff from attending the school.

Defendant investigated plaintiff's allegations by viewing a video that captured part of the incident and taking statements from the witnesses, plaintiff, and Blazo. Defendant concluded the allegation Blazo pushed plaintiff out the door was not corroborated by the other students or the video. Based on a discrepancy between the witnesses' accounts and the video, the nature of Blazo's contact with plaintiff was undetermined. Defendant found that after being contacted by Blazo, plaintiff pulled away, swung his arm down and back, and made contact with Blazo. The investigation concluded it was "plausible" that Blazo said "f*cking n*gger" during the incident. Blazo received a five-day suspension without pay and was required to undergo Harassment, Intimidation, and Bullying Awareness training and Crisis and Intervention training.

Plaintiff filed this action on October 8, 2015, claiming defendant discriminated against him "in the course of a public accommodation," in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Although Blazo was employed by defendant, plaintiff did not name him as a defendant.

4

The parties engaged in extensive discovery, which concluded on April 25, 2017. Defendant then moved for summary judgment, contending this was a single incident of unauthorized conduct by a low-level employee who is not part of the school's administration, and has no policy-making authority. Defendant argued there was no evidence it was aware of, supported, or sanctioned any prior discriminatory conduct by Blazo. Defendant did not bar plaintiff from attending the school and contends it took prompt remedial action in response, demonstrating it did not condone, acquiesce in, or support the alleged conduct. Defendant further argued there was no evidence it acted with an actual or apparent design to discourage plaintiff from attending the school. Relying in part on an unpublished opinion, defendant argued it was not strictly liable for the unauthorized acts of its employee in a denial of public accommodation case under N.J.S.A. 10:5-12(f)(1).

Plaintiff contends the school is a place of public accommodation within the meaning of the LAD. Plaintiff argued his testimony regarding his treatment by Blazo is sufficient to defeat summary judgment, and defendant's response to the incident is not an affirmative defense to a claim of public accommodation discrimination. Plaintiff relied on the language of the LAD, which provides it shall be unlawful discrimination "[f]or any owner . . . or employee of any place

A-5079-16T4

of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . ." N.J.S.A. 10:5-12(f)(1). Because Blazo was defendant's employee, plaintiff argued defendant is vicariously liable for his discriminatory conduct.

During oral argument before the motion judge, plaintiff acknowledged this is a single incident case. The court granted summary judgment to defendant, dismissing the complaint with prejudice. The judge held Blazo's racially disparaging remark was clearly outside the scope of his employment. The judge noted plaintiff did not suggest the school board's response to the incident "was anything other than appropriate remedial action." The judge concluded this was "an isolated remark made by one security officer. There's no evidence of any hostile or pervasive environment of discrimination." The judge determined N.J.S.A. 10:5-12(f)(1) does not impose "strict liability on the part of the school board for the actions of the employee." The judge further determined that while an employee can be held responsible for discriminatory conduct, the statute "does not go [so] far as to create vicarious liability on the part of the employer for actions of an employee that are outside the scope of [the] employment relationship."

After the judge announced his decision, plaintiff orally moved to amend the complaint, but did not present a proposed amended pleading. The court denied the oral motion. This appeal followed. Plaintiff makes the same arguments on appeal that it made before the trial court.[2]

We review an order granting summary judgment by employing the same standards governing the trial court. Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016); Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016)). Summary judgment is appropriate when, after reviewing the competent evidential materials submitted by the parties in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Grande v. St. Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (citations omitted); Steinberg, 226 N.J. at 366 (citing R. 4:46-2(c)). Because the dispute in this matter involves the application of the LAD to the facts of this case, we review the trial court's ruling de novo. Lee, 232 N.J. at 126. "That is, we give 'deference to the supported factual findings of the trial court, but' not to

_____

[2] Plaintiff has not argued the trial court erred by denying his oral motion to amend the complaint. "An issue not briefed on appeal is deemed waived." Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (citations omitted); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019). We deem that issue waived.

its 'application of legal principles to such factual findings.'" Id. at 126-27 (quoting State v. Nantambu, 221 N.J. 390, 404 (2015)). We "owe no deference to the interpretative conclusions reached by the trial court . . . ." Aronberg v. Tolbert, 207 N.J. 587, 597 (2011) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512-13 (2009)).

N.J.S.A. 10:5-4 recognizes as a civil right the opportunity "to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of race . . . ." To protect that right, N.J.S.A. 10:5-12(f)(1) declares it to be unlawful discrimination for

> any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of the race . . . of such person[.]

A "place of public accommodation" is defined in N.J.S.A. 10:5-5(l) to include any "high school." Thus, Absegami High School is a place of public accommodation to which the LAD applies.

In this case, plaintiff's ability to attend Absegami High School was not ultimately impaired, although, according to his version of the events, the discrimination "discouraged [him] from returning to and enjoying the school"

8

and he successfully sought to avoid further contact with Blazo. Notably, Blazo did not tell plaintiff he was not welcome at the school, much less that he was not welcome because he was African-American. Indeed, he was escorted from the school because school hours had ended, not because of his race.

In Franek v. Tomahawk Lake Resort, 333 N.J. Super. 206 (App. Div. 2000), a resort owner made an unretracted statement that handicapped persons were not welcome at the resort, although the affected person was permitted to picnic there. The resort's owner was also alleged to have said, "I don't want those kind of people here," and, "You shouldn't bring those kind of people here." Id. at 218. We held it was

> a violation of the LAD for the owner or operator of a public accommodation to tell a person, either directly or indirectly, that his or her patronage is not welcome because of a trait or condition which the LAD protects from discriminatory action, even though use of the facility on the particular occasion is not denied.
>
> [Id. at 216 (citations omitted).]

We reversed the award of summary judgement in favor of the resort owner and remanded the matter to permit plaintiff to proceed to trial. Id. at 218-19.

We reached a similar conclusion in Turner v. Wong, 363 N.J. Super. 186 (App. Div. 2003), in which we reversed an order of summary judgment in favor of a donut shop owner who refused to provide an African-American customer

with a requested replacement donut after she had bitten into the first one and declared it stale, accompanying the refusal with repeated racial epithets. Relying on Franek, we held that it was "for a jury to determine whether the racial insults were in fact uttered by defendant and, if so, whether they were designed to discourage plaintiff's use of a public accommodation on that day or in the future because of her race." Id. at 213.

In both Franek and Turner, the discriminatory statements were uttered by the entity's owner, the party that the plaintiffs sought to hold liable, and the comments were unretracted. Here, plaintiff seeks to hold the school district liable for a single incident of an unauthorized comment by a low-level employee in violation of the district's anti-harassment policy, as to which prompt remedial action was taken. Thus, the legal analysis differs from that undertaken in Franek and Turner.

Here, there is no competent evidence Blazo had previously uttered racially disparaging comments or exhibited racially discriminatory conduct. Defendant had no actual or constructive notice Blazo would engage in such behavior, which was outside the scope of his employment. Nor is there any evidence defendant supported or ignored any prior discriminatory conduct by Blazo. Also absent is any evidence defendant acted with an actual or apparent design to discourage

plaintiff from attending the school. Instead, defendant investigated the incident, meted out significant disciplinary action, and required Blazo to undergo training.

We find no basis for liability on defendant's part. We decline to read N.J.S.A. 10:5-12(f)(1) as imposing strict or vicarious liability on an employer for a single incident of an unauthorized comment by its employee, which violates the employer's anti-harassment policy, where there is no actual or constructive notice that the employee has exhibited discriminatory conduct in the past, and the comment did not relate to the plaintiff's present or future use of school facilities. Accordingly, summary judgment dismissing the complaint was appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                                    A-5079-16T4